## 19189. SEABOARD AIR-LINE RAILWAY CO. *v.* YOUNG.

JENKINS, P. J. 1. The petition was not subject to general demurrer in that it set forth no cause of action, or because it affirmatively showed that the driver of the automobile in which the decedent was killed was guilty of negligence proximately causing the homicide, where it was alleged that the decedent, while traveling in an automobile along a public road which made a sharp curve at and upon a bridge over the railroad-track of the defendant, approached the bridge with all proper care and diligence, at a speed not exceeding eight miles per hour, and in "easing" upon the bridge, and in making the very sharp turn thereat, touched the guard-rail thereof with a very slight force, but that, on account of the weak, rotten, and negligently maintained condition of the guard-rail, it allowed the car to go over the bridge and to fall on the track below. This is true for the reason that "it is incumbent upon a railroad company to exercise due care in the maintenance of a bridge over its tracks along a public highway in a condition safe for travelers passing over the bridge in the exercise of due care." In determining whether a railway company has exercised such due care, and whether it has complied with its duty in erecting and maintaining a "suitable" bridge, consideration should be given to the physical surroundings and the particular condition of the roadway approaching the bridge. Civil Code (1910), § 2673; *Hardin* v. *Southern Ry. Co.*, 36 *Ga. App.* 427 (136 S. E. 802). While it can not be said that the proper function of a guard-rail is to withstand the impact of an automobile negligently handled, if the physical surroundings are such that it could reasonably be supposed that an automobile in making such a difficult entrance upon the bridge, and while being driven in accordance with law and with all due care and prudence, would come in contact with the guard-rail, the jury would be authorized to say that such physical surroundings and conditions should be taken into consideration in determining the nature, character, and strength of the guard-rail required to be provided, and the allegation that the guard-rail in existence at the time of the alleged accident was weak, rotten, and insecure was such an averment as might be held to charge negligence on the part of the defendant.

2. The petition was amendable by setting forth that the bridge in question was constructed so that the floor of the bridge was higher than the roadway, and by alleging that the defendant had negligently permitted loose sand and dirt to accumulate on the abutment of the bridge

and the "woodwork thereof," and that the automobile in going upon the bridge struck the raised portion thereof and the accumulated sand and dirt, which caused it to turn and strike the guard-rail. The petition was also amendable by setting forth the name of the driver of the automobile, and by more particularly describing the construction of the bridge, and the nature and character of the roadway and the surrounding territory.

3. In such a suit, brought by a mother for the alleged wrongful death of her minor daughter, it could not be held that it was prejudicial error to permit the plaintiff to testify as to the number of persons composing the family, or that the statement of the court in ruling upon such testimony, to the effect that the plaintiff's right to sue was not affected by the fact that there were other members of the family, but that the plaintiff had "a right to sue for her anyway," was harmful to the defendant or calculated to prejudice the jury against the defendant.

4. "Where the question under examination and to be decided by the jury, is one of opinion, any witness may swear to his opinion, giving his reasons therefor." Civil Code (1910), § 5874. Accordingly, where one of the issues presented to the jury was as to the qualification and experience as an automobile driver of the person driving the car at the time of the decedent's death, it was not error to permit a person who was a passenger in the automobile, and who had observed the actions of the driver over a long trip, to testify as to the manner of her driving with respect to her care and competency.

(a) Nor was it error to allow such a witness, who on the occasion in question sat in the car next to the driver, to state that he did nothing to cause the car to hit the banister rail.

(b) The testimony of such witness to the effect that he did not notice any loose sand or dirt on the bridge could not have been harmful to the defendant.

(c) Nor was it ground for reversal that such witness was allowed to testify that the bridge in question was not as wide as the road, and to give his opinion, based thereon, that it was "a little narrow," especially as there was testimony from other witnesses showing, without dispute, the exact width of both the roadway and the bridge itself.

(d) The court did not err in permitting a witness who testified that he had ridden in automobiles for many years, but had never driven one, and had observed and knew the effect of soft sand and dirt on an automobile wheel, to testify that in his opinion striking loose sand and dirt on a bridge would have a tendency to change the course of an automobile. It was not improper for the court to state, in ruling upon the admissibility of such testimony, that its probative value was a question for the jury.

(e) The testimony of the father of the deceased as to the condition of a piece of timber picked up by him under the bridge a short time after the accident, and forming a part of the guard-rail, was properly admitted, in view of the testimony that the witness had made a search for the timber and was unable to find it.

(f) Likewise, the testimony of the father of the deceased to the effect that in his opinion he could have pushed the guard-rail off the bridge was

6

admissible, in view of the previous testimony of the witness as to the condition of the rail and the manner in which it was braced and fastened to the bridge.

(g) It was not error to permit the driver of the automobile in question, who was offered as a witness for the defendant, to testify, on cross-examination, after describing the manner and rate of speed at which the car was proceeding, and the condition of the roadway and the bridge, that the automobile struck the guard-rail with very slight force, and the guard-rail gave way and the car slowly toppled over, that in her opinion the guard-rail was not strong.

5. While it has been held that the fact that after an occurrence resulting in injury to one person, another, whom it is sought to hold accountable therefor, took additional precautions to prevent others from being likewise injured, can not be regarded as an admission of negligence, and that evidence of such subsequent precautions is not admissible (*Georgia So. & Fla. Ry. Co.* v. *Cartledge*, 116 *Ga.* 164, 42 S. E. 405, 59 L. R. A. 118), yet in the instant case, where the defendant company by its pleadings and its proof sought to establish that a short time prior to the happening in question the bridge had been repaired and rebuilt, it was competent for the plaintiff to offer proof, in rebuttal of such contention, to the effect that such repairs were not made until after the occurrence.

6. Under the ruling announced in the first-division of this decision, the contract executed between the county and the railroad company under which the bridge in question was constructed was not admissible in evidence, since the defendant, although exercising no control over the selection of a site for the bridge and the location of the highway, was under the duty of exercising care to construct and maintain the bridge in a condition safe for travelers passing over the bridge in the exercise of due care, having regard for the particular physical surroundings and condition of the roadway approaching the bridge. This duty arose by operation of law, and was not affected by any contract between the defendant and the county.

7. "A mother, or, if no mother, a father, may recover for the homicide of a child minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support." Civil Code (1910), § 4424. "Where father and mother and minor children all reside together and are mutually dependent upon the labor of the family for support, a minor child over fifteen years of age, whose labor or the proceeds of it comes into the common stock, is to be considered as contributing substantially to the support of the mother." *Augusta Railway Co.* v. *Glover*, 92 *Ga.* 132 (6) (18 S. E. 406). The charge of the court in the instant case, which, after stating the provisions of the code-section quoted, instructed the jury that a contribution by the child to the general support of the family would entitle the plaintiff to recover the full value of her life, if the jury should find the plaintiff entitled to recover, was not harmful error, since the fact of such partial dependency by the mother upon such contributions was established by uncontroverted evidence, and was in no wise disputed. *Middle Georgia &c. Ry. Co.* v. *Barnett*, 104 *Ga.* 582 (3) (30 S. E. 771); *Hudson v. Devlin*, 28 *Ga. App.* 458 (111 S. E. 693).

8. The charge of the.court to the effect that if the jury should believe that the direct and proximate cause of the death of the decedent was the negligent erection and maintenance of the bridge, the defendant would be liable for the homicide, was authorized by the evidence, and did not amount to an expression of opinion on the part of the court that the proof actually showed the guard-rails to be weak and frail, or that the bridge was negligently constructed or. maintained.

9. The charge of the court with reference to the rule that the negligence of the driver of an automobile is not to be imputed to a guest, but that the guest must herself exercise due caution and care in the occupying of the automobile, and due caution and care in her efforts to avoid injury or death, is not excepted to as being inherently incorrect, and it can not be said that this charge deprived the defendant of the benefit of its contention that the driver of the automobile was inexperienced and was known by the decedent to be inexperienced. If more ample instructions upon this contention of the defendant were desired, they should have been requested.

10. The charge of the court upon the question of comparative negligence was authorized by the evidence. The use of the word "plaintiff" instead of the word "decedent" was manifestly a mere slip of the tongue which could not have misled or confused the jury. The only possible error embodied in these instructions was that whereby the negligence of the driver might be taken to reduce damages, and this militated against the rights of the plaintiff rather than against those of the defendant.

11. It can not reasonably be said that the action of the court in submitting to the jury the mortality tables, and instructing the jury with reference to their use by using "by way of example" a person having an earning capacity of $40 per month, when the proof showed the decedent was earning $45 per month, was calculated to influence the jury in the amount of its verdict.

12. The evidence authorized a finding for the plaintiff in the amount of the verdict ($3,000). The special grounds of the demurrer not met by amendment were properly overruled. The trial appears to be free from substantial error. For no reason urged can the verdict in favor of the plaintiff be set aside.

*Judgment affirmed. Stephens and Bell, JJ., concur.*

DECIDED APRIL 19, 1929. REHEARING DENIED JUNE 17, 1929.

*N. L. Hutchins Jr., John B. Gamble,* for plaintiff in error.
*John I. Kelley, O. A. Nix,* contra.

### ON MOTION FOR REHEARING.

JENKINS, P. J. It is contended by a motion for rehearing presented by the plaintiff in error that the holding of this court, to the effect that the trial judge did not err in permitting the plaintiff to testify that her family consisted of herself, her hus-

band, and several children, and in stating, in connection with that ruling, that the plaintiff had "a right to sue for her anyway," was incorrect. The ruling was to the effect that such evidence was not "harmful to the defendant or calculated to prejudice the jury against the defendant." Movant cites *Central of Ga. Ry. Co.* v. *Prior,* 142 *Ga.* 536 (83 S. E. 117), and *Macon, Dublin & Savannah R. Co.* v. *Musgrove,* 145 *Ga.* 648 (89 S. E. 767), where the Supreme Court held, in a suit by a wife for the wrongful homicide of her husband, that it was error to allow evidence that the decedent had a family of four children, and that their only means of support was the dead husband's labor. These cases are distinguishable from the instant one, in that in them the suits were for the death of the husband, and evidence that the plaintiff, the widow, had been left with a family of numerous children to support, and their only means of support had been the dead husband's labor, was manifestly calculated to excite sympathy for the plaintiff and to prejudice the jury. While it is true that the evidence as to the number of persons in the plaintiff's family in the instant case was not material, since her right to recover the full value of the decedent's life was not thereby affected, it could not reasonably be said that the admission of such evidence was error such as would authorize or require setting the verdict and judgment aside on the ground that it was calculated to prejudice the jury against the defendant. There was no intimation that the other children were dependent upon the plaintiff, as in the cited cases, and it would seem that the proof was more calculated to prejudice the jury against the plaintiff, since it showed that the plaintiff had a husband whose duty it was to support the family.

Another ground of the motion for rehearing complains of the ruling to the effect that the testimony of the father of the decedent as to the condition of a piece of timber picked up by him under the bridge a short time after the accident, and forming a part of the guard-rail, was properly admitted, in view of the testimony that the witness had made a search for the timber and was unable to find it. It is contended that this witness testified that the timber had been left in the office of Mr. Nix, counsel for the plaintiff, and that the court overlooked the material fact that Nix went on the stand in behalf of the plaintiff but did not testify that he had lost the piece of timber or that he had made any search for it. This

statement is true, but the witness Young, the decedent's father, testified that he and Nix had together made a search for the timber in the office of Nix and could not find it.

It is further contended by the motion for rehearing that the ruling of this court to the effect that the trial judge did not err in allowing evidence to prove that after the accident the defendant railroad company had repaired the bridge in question, putting up railings and braces of a different character from those on the bridge at the time of the accident, was erroneous, and that, while the court recognized the rule in *G. S. & F. Ry. Co.* v. *Cartledge,* supra, its application of the ruling in that case is not supported by the facts in this case. The effect of the ruling contained in this division of the original syllabus is that the pleadings of the defendant and the evidence offered to show that the bridge in question had been repaired and rebuilt a short time prior to the accident rendered the rule laid down by the Supreme Court in the *Cartledge* case inapplicable, and the evidence for the plaintiff in rebuttal of such contention admissible. One of the sharply contested issues of fact was as to the condition of the banisters or guard-rails on the bridge at the time of the accident, as to the manner in which they were braced or fastened, and as to the character of the nails with which the upright posts to which the rails were fastened were nailed to the bridge. The defendant pleaded and offered evidence to prove that the bridge had been recently rebuilt, and that new banister rails were put up some six months prior to the accident, one of its witnesses testifying as to the size of the timbers used for the rails and for the upright posts, and as to the manner in which they were braced and the kind of nails used to fasten the uprights to the bridge. Another witness for the defendant testified that he made the repairs to the bridge after the accident, and that the only thing necessary to be done was to replace one post. We think, in view of the pleadings and this proof on behalf of the defendant, the proof for the plaintiff, which indicated that the bridge was not in any such condition as contended by the defendant, and had not been "recently rebuilt," but that the new banisters, etc., were put up after the accident, was properly admitted.

The remaining grounds of the motion for rehearing are without merit. *Rehearing denied.*