22007, 22008.  CENTRAL OF GEORGIA RAILWAY COMPANY *v.* KEATING.

812

Decided September 28, 1932.    Rehearing denied October 1, 1932.

*Goodrich & Cleveland, Boykin & Boykin,* for plaintiff in error.
*Willis Smith, Smith & Millican,* contra.

SUTTON, J.   Keating brought two suits against the Central of Georgia Railway Company, one for personal injuries to himself and his personal property, and the other for the homicide of his wife, caused by the negligence of the defendant.   Plaintiff and his wife were traveling in a southerly direction from Atlanta in an automobile towards Carrollton on a public highway of this State.   The railroad of the defendant and this highway are almost parallel where plaintiff and his wife were traveling.   They reached a point where the road made a sudden turn directly east and crossed a bridge over the railroad, which bridge was a wooden structure constructed by the defendant.   The plaintiff alleged that he was traveling at night and was not familiar with the road.   He alleged that the bridge was defective, the sills and guard-rails being rotten, and that it was not in proper repair or safe for travel.   He further alleged that he approached the bridge at about thirty miles an hour and that when he reached a point about thirty feet from the bridge on the west side thereof, certain sand and gravel raked up in the center of the road, which the defendant had allowed to accumulate there, caused his automobile to swerve to the right and headed it towards the north side of the bridge.   He further alleged

that when he reached approximately the center of the bridge he brought his car almost to a standstill, being near the guard-rails of the bridge on the north side, when his automobile struck the rails, running about three or four miles an hour, and the rails were so defective and rotten that they gave way and caused his car to fall from the bridge to the ground in the railroad cut, instantly killing his wife, injuring and hurting him, and destroying his automobile. The plaintiff set up that it was the duty of the defendant to maintain this bridge in a safe and suitable condition, and that the injuries above stated were caused by reason of its failure so to do. The defendant denied the material allegations of the petitions. The plaintiff introduced evidence tending to establish the allegations of his petitions. The jury returned a verdict for the plaintiff in each case. The defendant made separate motions for new trial, which the court overruled, and the defendant excepted. The same questions are for decision in both cases, and the pleadings and the evidence in each were identical. We will deal with both cases in one opinion.

■ The court rejected the evidence of certain witnesses as to the speed of the plaintiff's automobile about a mile from the scene of the accident. These witnesses stated that they did not know what kind of car it was that passed them, but that they only knew that it was a big car. There was no evidence that there were no other roads crossing or running into this highway between the point where these witnesses stated a big car passed them and the point where the accident occurred. In fact there was evidence of at least one other intersecting road. In these circumstances we do not think that the court erred in excluding this evidence. This case is distinguishable from the case of *Reed* v. *Southern Railway Co.*, 37 *Ga. App.* 550 (5) (140 S. E. 921). In that case there was no doubt as to the identity of the train and there was no evidence as to any intersecting railroads. Furthermore, a train usually maintains an even rate of speed, and it might be said that the speed of a train, when once shown, continues to be the same for a short distance at least. *Savannah &c. Ry. Co.* v. *Flannagan*, 82 *Ga.* 579, 588 (9 S. E. 471, 14 Am. St. R. 183). However, it has been held in other jurisdictions that the fact that one is traveling in an automobile at a high rate of speed a short distance away from an accident is no logical or relevant evidence that he was going at that

speed at the point of the accident. Stevens *v.* Potter, 209 Ky. 705 (273 S. W. 470).

■ A witness for the plaintiff testified that he was in the garage business, and on the occasion of this wreck he went to the scene thereof in his wrecker. He further testified that he found the car right down under the bridge. This witness then went into details as to the condition of the plaintiff's automobile and the position in which it was found. He testified that he had had a great deal of experience in removing wrecked cars, that in his opinion the plaintiff's car just tumbled off the bridge, and that he never noticed any indications that the car had struck the east bank of the fill. This evidence was objected to by the defendant. In our opinion this evidence was admissible, as the witness properly stated the facts upon which his opinion was based. The jury could draw their own conclusion from these facts as to whether his opinion was correct or not.

■ It was not error for the court to allow a witness for the plaintiff to testify that the condition of the guard-rails on the south of the bridge was rotten and that you could pick the nails out with your hand.

Evidence of the existence of defects or of a general defective condition in other portions of a structure is admissible, if therefrom the condition of that portion directly involved at the time of the injury can be reasonably inferred. Emporia *v.* Kowalski, 66 Kan. 64 (71 Pac. 232); 45 C. J. 1247, § 811; and see *Standard Cotton Mills* v. *Cheatham,* 125 *Ga.* 649 (54 S. E. 650). The jury could have taken into consideration the fact that the guard-rail on the south side of the bridge was in a rotten condition, in determining whether or not the entire structure was in a defective condition. *Standard Cotton Mills* v. *Cheatham,* supra. There was evidence that the entire bridge was built out of the same character of timber and at the same time, and that no repairs had been made thereon.

■ The court refused to allow a witness for the defendant to testify that he had seen children walking on these guard-rails before the accident, the witness stating that he could not name the date he saw them, did not know the names of any of them, that he did not know the year or how long it was before the accident that he saw children walking along these rails, and that he had seen

boys and girls sitting on these rails but did not know the year or month it was. In view of the presumption of the persistence of conditions of a continuing nature once shown to exist, evidence of the condition of a place at or from which an injury for which damages are sought is alleged to have occurred, within a reasonable time prior to such injury, is admissible in a proper case to show the character or condition of the place at the time of the injury, provided the condition or circumstances have not been materially changed in the interim. If the time is too remote, such evidence will be rejected. 45 C. J. 1238, § 801. So far as the interval of time is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control. The matter should be left to the discretion of the trial court. Wigmore on Evidence, § 437; Maryland &c. R. Co. v. Brown, 109 Md. 304 (71 Atl. 1005); Frankfort &c. Traction Co. v. Hulette, 32 Ky. L. R. 732 (106 S. W. 1193); Elvey v. Powers, 191 Mass. 588 (77 N. E. 1152); Woodcock v. Worcester, 138 Mass. 268. In the instant case, the witness having no recollection as to the year when he saw these children walking and sitting on these rails, we do not think that the court improperly rejected this evidence. The trial court could have properly taken the view that the evidence of this witness fell within the exception to the rule above stated and was therefore not admissible.

■ The defendant requested the court to charge the jury that "Upon approaching any bridge, sharp curve, or steep descent, or in traversing such bridge, curve or steep descent, the operator of a motor-vehicle shall at all times have said machine under immediate control, and shall not operate said vehicle at a greater rate of speed than ten miles an hour." The court refused this request, and the defendant assigns this as error and states that the requested instruction stated a correct principle of law, applicable to the issues in this case.

The above request was couched in the language of par. 2, sec. 2, of the act of August 15, 1921 (Ga. L. 1921, pp. 255, 256). The act of August 23, 1927 (Ga. L. 1927, p. 226) superseded and supplanted the above act of August 15, 1921. The act of 1927 was a general statute on the subject of the regulation of the speed of automobiles upon the streets and highways of this State, and covered the subject. It expressly provided for the speed of auto-

mobiles approaching any crossing or overhead bridge. This act does not expressly repeal the above act of 1921, but provides only that "all laws and parts of laws in conflict with the act be and the same are hereby repealed;" but by necessary implication the act of 1921 is repealed. "Where the provisions of the whole statute are revised in the later enactment, and where the latter statute was intended to prescribe the only rules upon the subject, the subsequent is held to repeal the former statute. When a revising statute covers the whole subject-matter of antecedent statutes, it virtually repeals the former enactments, without any express provision to that effect. Where some parts of the revised statute are omitted in the new law, they are not, in general, to be regarded as left in operation, if it clearly appears to have been the intention of the legislature to cover the whole subject by the revision." *Butner* v. *Boifeuillet*, 100 *Ga.* 743 (28 S. E. 464). "The rule as to repeal by implication is, in such cases, so far as we can ascertain from the authorities, that when the legislature intends to revise a former act . . or to deal exhaustively with the subject of all or a part of the original act, and a portion of the original act is left out, such omitted portion is repealed by implication." *Horn* v. *State*, 114 *Ga.* 509 (40 S. E. 768). We recognize the principle that repeals by implication are not favored, and it is only "when a statute is clearly repugnant to a former statute, and so irreconcilably inconsistent with it that the two can not stand together, or is manifestly intended to cover the subject-matter of the former and operate as a substitute for it, that such a repeal will be held to result. *Johnson* v. *Southern Mutual B. & L. Asso.*, 97 *Ga.* 622 (25 S. E. 358). In the case at bar it is clear that the act of 1927 was intended to cover the same subject-matter as the act of 1921 and to operate as a substitute therefor. *Sapp* v. *Elrod,* 41 *Ga. App.* 356 (153 S. E. 373). In the case last cited this court held that "The provision in the motor-vehicle act of 1910, that 'upon approaching a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour' (Ga. L. 1910, p. 95), was by necessary implication repealed by the motor-vehicle act of 1927, section 11 (Ga. L. 1927, p. 226), which clearly was intended to cover the same subject-matter and operate as a substitute

for it." Section 12(i) of the act of 1927 provides that "An operator shall reduce speed at crossing or intersection of highways, on bridges, or sharp curves and steep descents, and when passing any animal being led on the highway." Section 11 thereof provides that "No person shall operate a motor-vehicle upon any public street or highway at a speed greater than is reasonable and safe, having due regard for the width, grade, character, traffic, and common use of street or highway, or so as to endanger life or limb or property in any respect whatsoever; but said speed shall not exceed," in the case of a motor-vehicle, which has a gross combined weight of less than 10,000 pounds, with pneumatic tires, forty miles an hour.

Applying the above-stated principles, the court did not err in refusing the above request to charge.

■ The court did not err in refusing to charge the jury, when requested by the defendant, as follows: "I charge you that under the pleadings and evidence in this case, the condition of the road and approaches to this bridge are not an issue in the case, and you would not be authorized to find for the plaintiff because of any defect in the road and approaches to the bridge, if you find that the road or abutments were defective." The plaintiff claimed that while traveling in his automobile along a public road which made a sharp curve at a bridge over the railroad tracks of the defendant, he approached the bridge at a reasonable rate of speed and certain rock and gravel piled in the middle of the road at the approach to the bridge caused the back of his car to swerve around, and that he rolled onto the bridge close to the north side thereof and brought his car almost to a standstill, and the guard-rails gave way, they being rotten, and his automobile fell off the bridge. Plaintiff contended that the defendant was negligent in not maintaining a safe approach to the bridge, in allowing gravel and sand to be piled in the middle of the road on the approach, and in failing to erect and maintain a safe and suitable bridge over its line of railway. It is incumbent upon a railway company to exercise due care in the maintenance of a bridge over its tracks along a public highway in a condition safe for travelers passing over the bridge in the exercise of due care. In determining whether a railway company has exercised such due care, and whether it has complied with its duty in erecting and maintaining a suitable bridge, considera-

tion should be given to the physical surroundings and the particular condition of the roadway approaching the bridge. Civil Code (1910), §§ 2673, 2674; *Hardin* v. *Southern Ry. Co.*, 36 *Ga. App.* 427 (136 S. E. 802) ; *Seaboard Air-Line Ry. Co.* v. *Young,* 40 *Ga. App.* 4 (148 S. E. 757).

The "grade-crossing elimination act" did not take away the above duty from the railway company. Ga. L. 1927, p. 299. That act did not take away the statutory duty of the railroad company as stated above. The act does not provide that in the case of overpasses constructed prior to its passage the highway department shall maintain the approaches thereto. Section 9 of the act shows that this duty is placed upon the highway department only as to overpasses constructed after its passage.

■ It being the duty of the defendant to maintain and keep the bridge in question and its approaches in a safe and suitable condition, it was not error for the court to charge the jury that the plaintiff is entitled to recover if he proves any one or more of the grounds of negligence charged in his petition to the satisfaction of the jury, the petition alleging that the defendant failed to exercise due care in keeping the bridge and its approaches in a safe and suitable condition.

■ It was not error requiring the grant of a new trial for the court to charge the jury that "the plaintiff could not recover if the company shall make it appear, to the satisfaction of the jury, that its employees exercised all ordinary and reasonable care and diligence;" this instruction being immediately preceded by this charge: "There is no presumption against the railroad company, and the plaintiff must prove his cases as laid in order to authorize a recovery in his behalf."

■ The court charged the jury that the plaintiff sued for general damages to himself and also for special damages in doctors' bills, hospital bills, nurses' bills, ambulance bills, and for the loss of his automobile. He then defined general damages and instructed the jury that the amount that the plaintiff would be entitled to recover for his personal injuries was left to the enlightened conscience of an impartial jury. In immediate connection with his charge on damages the judge charged the correct method in reference to finding the amount of damages due by reason of decreased earning power. It would have been better had he specifically added

to the first part of his charge, as an element of special damage, the decreased earning capacity of the plaintiff. However, the court having instructed the jury as to how they should find as to plaintiff's decreased earning capacity, we are of the opinion that the court did not commit harmful and reversible error.

The court charged the jury that the husband was entitled to recover for the homicide of his wife the full value of her life, and that "the full value of the life of the deceased as shown by the evidence is the full value of her life without deduction for necessary or other personal expenses of the deceased had she lived." Thereafter the court charged the jury that "On the question of determining the amount of damages for services, if you find damages for services (the plaintiff may recover for the life services of his deceased wife), the jury in estimating the value of domestic services rendered by a wife are authorized to take into consideration what may be the value of many services incapable of exact proof, but measured in the light of your own observation and experience," and that "There need be no direct or express evidence as to the value of a wife's services, either by day, week, month, or any other period of time, or of any aggregate sum, but you determine from the evidence the amount which would fairly and justly compensate the plaintiff for his loss, if any." The court did not preface this latter excerpt from his charge with an instruction that in determining the full value of the life of the deceased wife they might look to the value of her services to her husband. Nowhere did the court charge the jury that having arrived at the gross value of the life of the deceased, they should reduce it to its present cash value. The charge of the court here dealt with instructed the jury that the plaintiff might recover for the life services of his deceased wife, without reducing the value of the same to its present cash value. We think this was error. The full value of the life of the wife as set out in the Civil Code (1910), § 4425, is its present value, and that is arrived at by determining from the evidence the gross value of the life of the wife, and then reducing this amount to its present cash value. *Central Railroad* v. *Rouse*, 77 *Ga.* 393 (3 S. E. 307); *Georgia Railroad* v. *Pittman*, 73 *Ga.* 325; *W. & A. R. Co.* v. *Jarrett*, 22 *Ga. App.* 313 (96 S. E. 17); *Savannah Electric Co.* v. *Dixon*, 18 *Ga. App.* 314 (89 S. E. 373). It follows that the judgment overruling the motion for new trial in the case

in which the plaintiff sued for the homicide of his wife was erroneous.

The ruling stated in the 11th headnote does not require elaboration.

The defendant contends that the verdict in each case was excessive. As we reverse the judgment in the case in which the plaintiff sued for damages for the homicide of his wife, the question whether or not the verdict in that case was excessive can not be passed upon. The amount of the verdict in favor of the plaintiff in the suit for damages to his person and property was $5000. He was a comparatively young man. He suffered injuries to his person, was put to considerable expense, such as doctors' bills, hospital expenses and the like, and his automobile, worth considerable money, was a total loss. There is nothing in the record to suggest bias or prejudice, and the amount of the verdict could easily have been arrived at under the evidence submitted. In these circumstances the verdict can not be set aside as excessive. *Merchants &c. Trans. Co.* v. *Corcoran,* 4 *Ga. App.* 654 (62 S. E. 130) ; *W. & A. R. Co.* v. *Jarrell,* supra.

The defendant filed a plea in abatement to the second count of the petition in each case on the ground that there was another suit pending between the same parties growing out of the same tort. This plea came too late. There had been two trials of the case on the first count of the petition. A plea of pendency of another suit must be taken advantage of at the first term. *Merrill* v. *Bagwell,* 70 *Ga.* 578. The defendant contends that the second count in each case set up a new and distinct cause of action and was a material departure from the original petition. A plaintiff may set out a cause of action in separate counts, so as to meet the possible phases of the evidence. *Central of Ga. Ry. Co.* v. *Prior,* 142 *Ga.* 536 (83 S. E. 117) ; *Gainesville & Dahlonega Ry. Co.* v. *Austin,* 122 *Ga.* 823 (50 S. E. 983). There was no practical difference between the first and second counts except slightly as to the manner in which the accident is alleged to have occurred. An amendment may be allowed adding a count on an implied contract to an action on an express contract for the same service. *Cox* v. *Ga. R. Co.,* 139 *Ga.* 532, 535 (77 S. E. 574). This amendment did not add a new and distinct cause of action, but the cause of action was the same, it only being pleaded in a different manner. Additional matter

descriptive of the wrong originally sued on may be added by amendment. *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318). No new and distinct cause of action is added to a petition by an amendment which contains additional matter descriptive of the same wrong pleaded in the original petition and which does not plead any other or different wrong. *Rowland Co.* v. *Kell Co.,* 27 *Ga. App.* 112; *Charleston &c. Ry. Co.* v. *Lyons,* 5 *Ga. App.* 668, 672 (63 S. E. 862).

Applying the above principles, we can not hold that the second count to the petition in these cases added new and distinct causes of action, or was such a material departure from the original petitions as to allow the defendant to file its plea in abatement. The defendant could have filed its plea in abatement on the same ground at the first term. Instead it waited until the cases had been tried twice, and then, when the plaintiff amended by adding the second count to the petition, it offered this plea. We are of the opinion that the trial court correctly dismissed this plea.

The defendant demurred generally to the amendments offered to the petitions in these cases, on the ground that they set up a new and distinct cause of action. It also demurred specially to certain paragraphs thereof. The court overruled these demurrers. Under the ruling made in the preceding division of this opinion, the amendments did not set forth a new and distinct cause of action, and it was not error for the court to overrule the demurrers on this ground. No error is shown in the court's action in overruling the special demurrers.

The evidence authorized the verdict in favor of the plaintiff in the case in which he sued for injuries to his person and property, and the court did not err in overruling the motion for new trial therein.

As we reverse the judgment overruling the motion for new trial in the case in which the plaintiff brought suit for the recovery of damages for the homicide of his wife, for the reasons set forth in the tenth division of this opinion, we do not pass upon the question whether the evidence authorized the verdict in that suit.

*Judgment reversed in case No. 22007. Judgment affirmed in case No. 22008. Jenkins, P. J., and Stephens, J., concur.*