27981. LUMLEY *v.* POLLARD, receiver.

DECIDED FEBRUARY 15, 1940.

*A. L. Miller,* for plaintiff.

*A. R. Lawton Jr., H. A. Wilkinson,* for defendant.

SUTTON, J. ■ Count 1 of the petition, by allegations of facts fully set forth in the foregoing statement, charges that the defendant, by its negligence, brought about the death of the plaintiff's son, a minor upon whom she was dependent and who contributed to her support. Briefly summarized, the alleged negligence consisted in the defendant's failure to keep and maintain the railroad bridge and its approaches in a condition safe for travelers lawfully thereupon. The only question to be decided is whether, as contended by the plaintiff, the duty with respect to the safety of the bridge and its approaches rested upon the defendant or, as contended by the defendant, devolved upon the State Highway Department of Georgia. The Code, § 94-503, provides: "All rail-

road companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." The Code, § 94-504, provides: "Such crossings shall include the width of land on both sides of the road allowed by charter or appropriated by the company therefor, and as many feet beyond, each way, as is necessary for a traveler to get on and off the crossing safely and conveniently." These provisions of law have long existed, and are to be found in the first Code (1863) under sections 678 and 679, the first having been codified from the act of 1838, approved December 31, 1838. It has been held by the Supreme Court that the duties here enjoined by the legislature in the exercise of its police power are continuing duties, and that a railroad's obligation in the premises has not ended merely because it has provided a crossing which is adequate for travelers at the time of its construction, but that the obligation has reference to all future exigencies of travel, and that "the duty of the railroad company to construct and maintain, at its own expense, suitable crossings at the intersection of the railroad with highways, applies as well to highways laid out and opened after the construction of the railway as to those existing prior to its construction." *Cleveland* v. *Augusta*, 102 *Ga*. 233, 247 (29 S. E. 584, 43 L. R. A. 638). See also, in this connection, *Southern Ry. Co.* v. *Atlanta Rapid Transit Co.*, 111 *Ga*. 679 (36 S. E. 873, 51 L. R. A. 125).

"The term 'bridge' includes all the appurtenances necessary to its proper use, and embraces its abutments and approaches," and whatever "is necessary as an approach, to connect the bridge with the highway, is an essential part of the bridge itself." *Howington* v. *Madison County*, 126 *Ga*. 699 (55 S. E. 941); *Atlantic Coast Line R. Co.* v. *Spearman*, 42 *Ga. App*. 536, 540 (156 S. E. 824). "An embankment contiguous to a bridge and made as a necessary means of access thereto, so as to enable teams and wagons to pass over it, is a part of the bridge, and the authorities charged with using ordinary care for the purpose of keeping the bridge in reasonably safe condition for use by the public in the ordinary modes of travel are under a duty to use a similar measure of diligence in regard to such abutment or approach." *Morgan County* v. *Glass*, 139 *Ga*. 415 (4) (77 S. E. 583). In constructing and maintaining

a bridge consideration must be had to the physical surroundings and conditions of the highway approaching the bridge. *Hardin* v. *Southern Ry. Co.,* 36 *Ga. App.* 427 (136 S. E. 802); *Seaboard Air-Line Ry. Co.* v. *Young,* 40 *Ga. App.* 4 (6) (148 S. E. 757); *Central Ry. Co.* v. *Keating,* 45 *Ga. App.* 811, 817 (165 S. E. 873). It is for the jury to determine whether a railroad properly constructs and maintains an approach for such distance on each side of the bridge as to enable a traveler to get on and off the crossing safely and conveniently. *Central of Georgia Ry. Co.* v. *Dumas,* 44 *Ga. App.* 152 (8) (160 S. E. 814).

It is contended by the defendant in error that under the grade-crossing elimination act of 1927 (Ga. L. 1927, p. 299), as codified in the Code, § 95-1901 et seq., the public highways of the State are under the sole control and direction of the State Highway Department of Georgia, and that the liability of a railroad for failure to maintain its bridges and approaches safe for travel no longer exists. It has however been held in *Atlantic Coast Line R. Co.* v. *Spearman,* supra, that the provisions of law, Code §§ 94-503 and 94-504, were not repealed by the act creating the State Highway Department and establishing a system of State roads (Ga. L. 1919, p. 242, Code, § 95-1501 et seq. and § 95-1701 et seq.), and in *Central of Georgia Ry. Co.* v. *Keating,* supra, it was held that the grade-crossing elimination act did not take away the duties of the railroad as prescribed in the Code, §§ 94-503 and 94-504. *Central of Georgia Ry. Co.* v. *Keating,* 177 *Ga.* 345 (170 S. E. 493); s. c. 47 *Ga. App.* 336 (170 S. E. 497). The Supreme Court ruled that as the bridge in question in that case was constructed prior to 1927, and neither the county nor State authorities had taken any steps to bring about its improvement or betterment, the Court of Appeals properly held that in these circumstances the act of 1927 was inapplicable. It was shown in the opinion that sections 8 and 9 of the act, Code §§ 95-1908 and 95-1909, compel this conclusion. The Code, § 95-1908, provides: "Whenever in the judgment of the Department exercised in respect of a State road, or in the judgment of a county board exercised in respect of a county public road, an existing underpass or overpass, constructed prior to the approval of this chapter, is unsafe or inadequate to serve the traffic for which it was constructed, the Department, when State roads are involved, or the board, when county public roads are in-

volved, may proceed to bring about the improvement or betterment of the existing structure. In any such event the procedure and division of the cost of construction and the cost of the maintenance of such improvement or betterment .shall be as herein set forth in sections 95-1903 to 95-1906 and 95-1909." The Code, § 95-1909, provides: "After the construction of an overpass or underpass, it shall be the duty of the Department in the case of State roads, and of the county board in the case of county public roads, to maintain at its or their own expense the drainage, surface, and pavement of the highway and bridge, as well as the approaches and guard-rails, if any, except that when an overpass is constructed with a floor of wood, then the railroad or railroads shall maintain such floor. It shall be the duty of the railroad or railroads to maintain at its or their expense the foundations, piers, abutments, and superstructure of all underpasses and overpasses located within the limits of its right of way." It is alleged in the petition that there has been no improvement or betterment of the bridge and approaches, but that they have always been maintained and controlled by the railroad company prior to its receivership and since then by the receiver. In these circumstances it could not be said that the State Highway Department has assumed any authority or dominion over the crossing so as to relieve the defendant of the duty of proper maintenance. Nor is the principle of law enunciated in *Callaway* v. *Georgia Railroad & Banking Co.*, 53 Ga. App. 785 (187 S. E. 399) and *Shedd* v. *Pollard*, 55 Ga. App. 828 (191 S. E. 492) applicable, as contended by counsel for the defendant in error, to the alleged facts of the present case. Here there is no allegation that the bridge was constructed under any plans or specifications, by requirement of any governmental agency, but it is shown that the railroad built the same according to its own ideas prior to the act of 1927. Since, therefore, neither the State Highway Department nor any county authority had made any improvement or betterment of the existing structure, and the bridge and its approaches were not built under the specific plans or specifications of any governmental agency, the original duty of the railroad has not in any wise been changed, and upon proof of the negligence alleged in count 1 of the petition the plaintiff would be entitled to recover.

It is urged by counsel for defendant in error that the petition shows that the bridge was under the control of the State Highway

Department because it is alleged that "State highway No. 39 is a public highway, kept up and worked by the State of Georgia, and was on the 26th day of September, 1937." This is not equivalent to alleging that the bridge and its approaches were under the control of or had been worked by the State of Georgia, and immediately after the above-quoted language it was alleged "but said bridge and its approaches were constructed prior to the act of 1927, and have not been improved since said act but that the railroad or receiver have continued to maintain the same in the same conditions as originally constructed." The son of the plaintiff was a guest of the driver of the car. No joint mission or control over the car or the manner of operating it was shown. The petition does not disclose that the death of the son was solely caused by the negligence, if any, of the driver, or that the son by the exercise of ordinary care could have avoided the consequences of the negligence of the defendant. Inasmuch as count 1 of the petition set forth a cause of action, the court erred in sustaining the defendant's general demurrer thereto. Since it clearly appears from the order of the court that only the grounds of the defendant's general demurrer were passed upon, we have not undertaken to pass upon the questions raised by special demurrers, and in remanding the case have left open for determination the grounds of the special demurrer. *Simpson* v. *Sanders,* 130 *Ga.* 265, 271 (60 S. E. 541) ; *Wofford Oil Co.* v. *Calhoun,* 183 *Ga.* 511, 512 (189 S. E. 5) ; *Willingham* v. *Glover,* 28 *Ga. App.* 394 (1) (111 S. E. 206) ; *Hunter* v. *Moss,* 41 *Ga. App.* 13, 15 (151 S. E. 831).

In the second count of the petition the plaintiff seeks to recover, as next of kin, for pain and suffering because of the mutilation of her son's body after the alleged homicide. In *Pollard* v. *Phelps,* 56 *Ga. App.* 408 (1) (193 S. E. 102), it was held: "While it is well settled that for mere negligence one can not recover damages for mental pain and anguish unless there has been damage to person or purse, it is equally well established that for a wanton and wilful tort or for a reckless disregard of the rights of others, equivalent to an intentional tort by the defendant, the injured party may recover for the mental pain and anguish suffered therefrom. . . While at common law there can be no property in a dead body, the right to its possession and disposition is a quasi property right which the courts will recognize and enforce, and, in the ab-

sence of testamentary disposition, the right of preservation and burial, to receive the body in the same condition in which it was when death supervened, belongs to the husband or wife, or, if none, to the next of kin." While it is alleged that the automobile was in plain view of the engineer for a distance of half a mile, it was not unequivocally alleged that he actually saw it, and only negligence, or a failure to see it, was set forth. Notwithstanding that it is alleged that the engineer wantonly and wilfully ran over the dead body, the specific facts alleged show only that he "saw the wrecked car [not the body] in time to have stopped the train or should have seen it and would have seen it had he not negligently been otherwise engaged in conversation and total inattention to his duties." These facts do not show actual knowledge of the dead body on the track, and the allegations charge only constructive knowledge (*Thomas* v. *Georgia Granite Co.*, 140 *Ga.* 459, 460, 79 S. E. 130; *Atlantic Coast Line R. Co.* v. *Spearman*, 42 *Ga. App.* 536, 546, 156 S. E. 824), which does not sustain the conclusion that the engineer's acts were wilful and wanton. Nor do any facts alleged show such a reckless disregard of the rights of others as to amount to wilfulness and wantonness. It is shown under count 2, as well as in the brief of counsel for the plaintiff in error, that recovery was sought therein only for damages because of the mutilation of the body after the homicide, and in the absence of wilfulness and wantonness in running over the body no cause of action in this respect was set forth. The trial court properly sustained the defendant's general demurrer on this ground.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*