## SOUTHERN RAILWAY COMPANY *v.* ATLANTA RAILWAY AND POWER COMPANY.

## SOUTHERN RAILWAY COMPANY *v.* ATLANTA RAPID TRANSIT COMPANY.

1. Even if the provisions of Civil Code, § 2219, are applicable to the crossing by a street-railroad of any other railroad, the phrase, "heretofore or hereafter chartered by the legislature of this State," embraces a street-railroad company whose charter, though granted by the secretary of

State, has been confirmed and made valid by an act of the General Assembly. A company having such a charter may properly be termed one " chartered by the legislature."

2. No new burden or servitude is imposed upon a public street or highway by constructing and operating therein a street-railway for the transportation of passengers, the cars of which are propelled by electric power.

3. That a street-railway company has under its charter authority to use steam as well as electricity as a motive power is a matter of no consequence in testing its right in a given instance to cross a railway on a street under a municipal grant restricting the company to the use of electric power, and where it is not seeking to employ steam power.

4. A railroad corporation which is permitted to construct its tracks across an existing city street or public road does so subject to the condition that it must submit to the increased inconvenience to it which may result from the growth and development of the city or country and the consequent increase of travel in the usual methods along such street or road.

5. A company owning and operating a street-railway of the character above indicated may, under the permission of the proper municipal or county authorities, construct its lines across the track of a steam-railroad company and use the same without instituting condemnation proceedings or being required to pay damages.

Argued July 26, — Decided August 7, 1900.

Petition for injunction. Before Judge Lumpkin. Fulton superior court. June 29, 1900.

*Dorsey, Brewster & Howell* and *H. A. Alexander*, for plaintiff. *Goodwin & Hallman*, for Atlanta Railway and Power Co.

*John L. Hopkins & Sons, Brandon & Arkwright, Rosser & Carter*, and *King & Spalding*, for Atlanta Rapid Transit Co.

LEWIS, J. The Southern Railway Company brought suit in the superior court of Fulton county against the Atlanta Railway and Power Company, a corporation owning and operating lines of street-railway in Fulton county and in the city of Atlanta. The petition, in substance, alleged that plaintiff was in possession of, owned, and operated two lines of railroad, among others, leading from the city of Atlanta in a southeasterly direction, one running to the town of Fort Valley in said State, and the other to the city of Brunswick, Ga., and each ran through Fulton county and crossed what is known as the McDonough public road at grade level on said public road at a place designated as Henderson's crossing in the county of Fulton. In the transaction of its business it was obliged to

run and does run across said McDonough public road, upon the lines of its railway, a great many passenger and freight trains every day, and this renders Henderson's crossing an exceedingly dangerous and hazardous one. It alleged that the Atlanta Railway and Power Company, owning and operating a system of street-railways in the city of Atlanta and Fulton county, was preparing and intending to lay its tracks across the line of plaintiff's railroad at Henderson's crossing on the McDonough road; that it had prepared everything for this purpose, and it would be accomplished unless enjoined from so doing. To permit this, it was charged, would render the use of the public crossing a constant menace of danger to the traveling public, and would at the same time do petitioner an irreparable injury in retarding the work and business in which it was engaged, and would cause irreparable and perpetual damage to petitioner, resulting in delay to its business and in accidents to both persons and property while crossing at said point. It was charged that the Atlanta Railway and Power Company was operating its street-railway and proposing to cross plaintiff's track by virtue of a certificate of the secretary of State, issued on May 16, 1891, which certificate was confirmed by the legislature on August 31, 1891. Plaintiff denied the power and authority of the defendant, under its charter and under the law by which it is operating, to cross the track at a grade level without defendant's consent; alleged that the purpose to cross the track would be consummated unless it was restrained by the court; and prayed for an injunction restraining defendant from in any manner laying its track across plaintiff's lines of railroad at Henderson's crossing in the county of Fulton. Upon this petition a temporary restraining order was granted by the court. An amendment was added to the petition, to the effect that the Atlanta Railway and Power Company was chartered by the secretary of State, and not by the legislature, and that the general law of the State regulating the crossing by one railroad of the track of another, as embodied in Civil Code, § 2219, restricts the right of crossing the track of another railroad to those railroad companies which are chartered by the legislature, and that therefore defendant is forbidden by law from crossing the track of petitioner. The

right of plaintiff to cross McDonough road constitutes an ease-ment of inestimable value vested in petitioner, and, as the owner of such easement, it has a right to operate its road on said crossing free from any hindrance or molestation whatever, save such as is incident to the ordinary use of said road by the pub-lic. The petition then specifies the damages which would re-sult to plaintiff by increased delay of its business, wear and tear of its machinery, and danger to life and property from the crossing of its road by defendant.

Defendant filed an answer to the petition, and denied the facts set up therein as to Henderson's crossing being dangerous and hazardous, as alleged. So far as any danger is concerned, it is caused by plaintiff's trains and traffic crossing over a public highway which existed thirty-five or forty years prior to the building of its railroad. Defendant claims a right to cross the track under and by virtue of the provisions of its charter granted in the first instance by the secretary of State on May 16, 1891, in compliance with the general law for the incorporation of rail-roads, approved September 27, 1881, and subsequently confirmed by an act (Georgia Laws, 1890–91, vol. 1, p. 169) approved August 31, 1891. It denies that the language quoted in the petition from section 9 of the act of September 27, 1881 (Code of 1882, §§ 1689 (a) et seq.), was in force on May 16, 1891, when it was first incorporated, or on August 31, 1891, when its charter was confirmed by the General Assembly of Georgia. It denied that its crossing plaintiff's road will have the effect of adding to the dangerous condition of the crossing; alleges it will only have the effect of diverting the travel on said highway from private vehicles and persons traveling on foot and horseback to and upon its cars, and, as a matter of fact, the result will be to largely minimize the chances for accidents; and that the build-ing of its street-railway upon said public road will not create any additional burden upon said railway, and none upon said public road. It has a legal right to cross plaintiff's tracks with its street-railway at grade level along and upon said McDon-ough road at Henderson's crossing. Defendant prays that plain-tiff be enjoined and restrained from interfering with it in the con-struction of its railway on said public road at Henderson's cross-ing, and that the temporary restraining order granted against

the defendant be dissolved.   The answer as amended also denies the material charges in the amended petition of the plaintiff.

A like petition was filed by the Southern Railway Company against the Atlanta Rapid Transit Company, to enjoin it from crossing its road on a street in the City of Atlanta.   It appears that this road procured a franchise from the City of Atlanta to construct and operate its line along Decatur Street and across the tracks of plaintiff to the city limits.   Both these street-railways procured like franchises from proper authorities to operate their railroads in Atlanta and beyond the limits of that city to Decatur.   It was conceded that the issue in these two cases were practically the same; the only difference being that the Atlanta Rapid Transit Company also had in its charter the power to use steam, but the city conferred upon it only the power to use electricity, and it did not propose to use any other motive power in the operation of its road.   After hearing the evidence for plaintiff and defendants, the court denied the injunction prayed for in each case, and dissolved the former restraining orders granted.   To these judgments plaintiff excepts. The grounds of error alleged are as follows:   1st.  Under the constitution and laws of Georgia, private property can not be taken or damaged unless just compensation has been first paid ; and the right of petitioner to cross Henderson's crossing was a valuable property right subsisting in it, and was embraced within the term "property" as used in the constitution ; and the construction of the street-railroad tracks across the tracks of petitioner was a taking and damaging petitioner's said property right.   2d.  Although defendant was thus preparing and threatening to take and damage petitioner's property, it had neither paid nor offered to pay, nor had it taken any steps to ascertain, the damages that petitioner would suffer by such crossing of its tracks.   3d.  The act of the defendant, in building its tracks across the tracks of petitioner without first paying just compensation for damages inflicted, was an unlawful trespass upon petitioner's rights, and without authority of law. 4th.  For the acts complained of petitioner was remediless at law, and could receive adequate relief only in a court of equity. 5th.  The evidence and pleadings show that the Atlanta Railway and Power Company was incorporated by act of the

secretary of State, and under the law of Georgia only those railroad companies which were chartered by the legislature have the right to cross the tracks of another railroad company at grade. The same questions were raised in the case against the Transit Company, except the one last mentioned; and as to this company the point as to its charter power to use steam was insisted upon.

1. One point made by the petition in this case against the Atlanta Railway and Power Company is, that this company, in the light of the history of its charter, has never been incorporated by the legislature of this State, but was incorporated by certificate from the secretary of State, and that therefore, under Civil Code, § 2219, as the privilege of one railroad company crossing another is only given to such companies as are chartered by the legislature of this State, this defendant company has no right at all to cross plaintiff's road. We do not think, however, that a street-railroad constructed on a public highway, with consent of the proper authorities having jurisdiction over such highways, needs any benefit from the provisions of Civil Code, § 2219. Being a public highway, it has, independently of that section, a right to cross the tracks of a railroad crossing the public road, just as any other vehicle or mode of transportation on such public road might cross the same; provided it duly obtains a license from the proper authority in charge of the street or road it proposes to use. But even if the provisions of Civil Code, § 2219, are applicable to the crossing by a street-railway of any other railroad, we are quite confident that the phrase, "heretofore or hereafter chartered by the legislature of this State," embraces a street-railroad company whose charter, though granted by the secretary of State, has been confirmed or made valid by an act of the General Assembly. While this defendant company originally obtained its charter from the secretary of State, the same has since been confirmed by an act of the legislature of August 31, 1891. Acts of 1890–91, p. 169. It is therein declared: "That all charters heretofore granted by the secretary of State to street and suburban railroad companies are hereby confirmed and declared to have had full effect from their dates. See *Almand* v. *Atlanta Consolidated St. Ry. Co.*, 108 *Ga.* 423 et seq., where

the charter powers of this defendant company were thoroughly discussed by this court; and where the act of August 31, 1891, above cited, was recognized by the court as confirming by direct act of the legislature all charters theretofore granted by the secretary of State.

2. The main contention in behalf of plaintiff in error in these cases is, that the defendants have no right to cross its track even on these public highways without first making compensation for the damages which would result therefrom. It is obliged to be conceded that no such damages can be claimed unless the acts of the defendants complained of would amount to an invasion of some property right of the plaintiff resulting in its injury and damage. It appears from the record that many years before plaintiff's line of railway was constructed over the highways in question, they had been in use for travel by the public. The only right the railway company acquired was necessarily simply an easement to cross these highways with its lines of railway, and to transport across the same its freight and passengers. It acquired no fee-simple title whatever to any portion of the road, but necessarily received its easement subject to the right of the public to continue to freely use the highway for travel. This, of course, does not imply that the government authorities having control of these highways can not, as the public exigencies and convenience may require, for instance by an increase of population in cities or towns, add to the facilities for travel over such roads. These authorities would have as much right to grant licenses and privileges to others to use vehicles and conveyances propelled by different kinds of power for the purpose of accommodating the public, and for the public benefit, as the plaintiff company would have to increase the number of cars and engines on its line of railway, and the frequency of trips across these highways, whenever this would be demanded by the increase in its business. If, for instance, in this case, it should happen that the present business of the plaintiff company requires twice as many cars and engines now as it did soon after its first construction, can it be pretended that either the county or the municipal authorities would have a right to exact of it any pay for such further privileges before they could be exercised?

Now, if these electric-car companies impose no new burden or servitude upon the public streets or highway by constructing and operating thereon street-railways for the transportation of passengers, the cars of which are propelled by electric power, it will necessarily follow that passing over a railway-track crossing a public highway does not make them liable for any damages.

Whether or not a company engaged in the operation of electric cars upon the streets of a city, or the public roads of a county, would thereby impose a new servitude upon such roads, and would therefore be liable to damages which others might sustain in consequence thereof, seems to be an open question in this court. In the case of *County of Floyd* v. *Rome St. R. R. Co.*, 77 *Ga.* 614, it was decided that a railroad operated by horses on a public highway is not an appropriation of that highway to a different use. It will be seen from the facts in that case that the County of Floyd had constructed a bridge which spans a river at the foot of Howard street in Rome, Ga., and placed it under the control and management of the authorities of the City of Rome. The Rome Street Railroad Company was empowered by its charter to lay out, construct, equip, use, and employ street-railroads in the City of Rome and Floyd county, and was given power to cross the bridge in question. That bridge was afterwards washed away. The county constructed a new one, and then sought to enjoin the street-railroad company from running its track over the bridge without paying compensation therefor. The injunction applied for was refused, which refusal was affirmed by this court. On page 618, Hall, Justice, delivering the opinion, said : " The laying of railroad-tracks in a public highway or street does not subject it to a new use or servitude. Its use 'is not confined to the precise mode or kind of use which was in view at the time of the taking, but may extend to other modes which were then unpracticed and unknown.' " It was further announced : " A railroad operated by horses on a public highway is not an appropriation of that highway to a different use ;" and it was recognized that in some States the decisions go so far as to hold that the appropriation of a highway to the use of a railroad propelled by steam would not change the use to which it was originally dedicated, while in others the contrary was held as

to steam-railroads. It is true this decision had reference to street-railroads operated only by horse power; but we can not conceive how, if the cars are operated by electric power, they can produce any more burden or servitude than those operated by horse power. The latter certainly, with the horse and car combined, would take up more space on the street than the ordinary electric car; and the facilities for stopping and avoiding accidents are certainly not any greater than they would be when electric power is used. This question, however, has been passed upon by courts of last resort in other States, and we have failed to find a single case where it has ever been held that a street-car company, it matters not by what power its cars are propelled, did not have a right, after receiving a grant from proper municipal or government authorities, to use streets, and to pass over the lines of other railways that may cross such streets, without being liable in damages to such other railway companies. There is, however, abundant authority to sustain the contrary view. In Chicago Ry. Co. *v.* Whiting R. Co., 139 Ind. 297, it was held: "Since it is the settled law of this State that a street-railway is not an additional burden to that of the easement which the general public has in the street, and that the street-railway company's right to use the street is founded on that easement, it must be held that the right of a street-railway to cross over the tracks of a steam-railway laid on such street is subject to no conditions other than those to which the general public is subject in traveling over such streets. Hence it is not error to enjoin a steam-railway company from interfering with a street-railway company where the latter is proceeding to construct a proper crossing at its own expense." In that case it appeared that the steam-railway company sought to interfere with a street-railway company, which was operated by electricity, and to prevent it from proceeding to construct a crossing over the railway of the former. The street-railway company applied for an injunction, and the grant of the same was sustained by the Supreme Court of Indiana. It was further decided in that case that the same principle applies where the crossing is in a public highway not a street. See this same case reported in 151 Ind. 577, in which this principle was reaffirmed.

In Chicago R. R. Co. *v.* West Chicago Co., 156 Ill. 255, it was held : "The fact that the tracks of a railroad company are laid across city streets and its cars permitted to pass over them gives the company no exclusive use of the crossing, but only a use to be enjoyed with the public.    Erections upon a public street impose no additional servitude, where they aid and facilitate its use for the purposes of travel and transportation. Permission to a street-railway company to lay its tracks in a public street is not a grant of an additional easement in the soil of the street, such road being merely a modification of the existing public use, adding thereto an additional mode of conveyance and inflicting no damage upon the owner of the fee."    It appears in that case that the street-railway company intended to lay its tracks and operate its cars by animal power only, although it had the right to use cable, electric, or other motive power.    In Elizabethtown R. R. Co. *v.* Ashland Ry. Co., 96 Ky. 347, it was held : "When a railroad company has obtained the right to pass over a turnpike by the permission of those controlling the road, the right thus acquired is not exclusive of the rights of the public, or of such uses and purposes as those for which public highways and streets are established, among which uses are the establishment and operation of street-railways.    Therefore the railroad company has no such property rights in the crossing as entitle it to compensation from a street-railway company crossing its track at that point, the progress of the cars of the former not being unreasonably impeded or interfered with."    It seems from that case that the charter of the street-railway empowered it to use steam, horse, or other propelling power for the transportation of its passengers.    Counsel for plaintiff in error seek to distinguish that case from the one at bar, by reason of general and special legislation, and special grants to the street-railway company ; but we fail to see from the record and report of that case that the street-railway had any more special grant of power to use the streets and highways where it had its road in operation than the defendants in this case have under the law and the licenses granted them to use the street and highway in question.    In Chicago R. R. Co. *v.* Steel, 47 Neb. 741, it was held : "A railroad company which has by ordinance acquired a permanent easement

in the streets of a city is not entitled to compensation from a
street-railway company as a condition to the crossing of its
tracks by the latter under a grant of power from the city."
See the able opinion of Post, C. J., on p. 742, et seq., and au-
thorities he cites. .The following is the conclusion of his opin-
ion: "The doctrine of the cases cited, and which to us appears
altogether reasonable and sound, is that a railroad company
acquires no exclusive use of streets crossed by its tracks with
the consent of the city or other municipal body, but must en-
joy the right so conferred in common with the general public;
that it is presumed to have contemplated the adoption of such
improved means of travel as the exigencies of the case require
in order to best subserve the public interests and necessities;
and that any mere inconvenience suffered by it on account of
the crossing of its lines by the tracks of street-railways by per-
mission of the proper authorities is damnum absque injuria."
See the same principle enunciated in T. & P. Ry. Co. v. Rose-
dale Ry. Co., 64 Tex. 80, where it was held: "Streets are ac-
quired, established, and maintained for the accommodation and
convenience of the inhabitants and the general public, and may
be used for the convenience of the public by the ordinary modes
of conveyance operated upon such streets, the chief of which,
in this case, was the street-railway. . . Railroad companies
have not the exclusive right to a public crossing, but are re-
stricted by public convenience and necessity." In the case of
Kansas City R. R. Co. v. St. Joseph R. R. Co., 97 Mo. 457, it
appears that a railroad company obtained from the city the
right to keep and maintain its tracks and switches upon cer-
tain land, and to construct such other tracks, switches, and
turnouts upon the land and across a street, when opened, as it
deemed necessary for the transaction of its business. It was
there held that such reservation was not the grant of an exclu-
sive privilege, but only equivalent to the usual permission to
occupy the street with its tracks, and plaintiff was not entitled
to compensation from defendant railroad company for laying its
track along the street by permission of the city and across
plaintiff's track therein, nor could it enjoin defendant from so
laying its track, when authorized by the city to do so. See
also Du Bois Ry. Co. v. Buffalo Ry. Co., 149 Pa. 1. Several

44.

of the States whose decisions are directly in point, and which are cited above, have provisions in their constitutions similar to ours, to the effect that private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid. The States referred to are Nebraska, Illinois, Missouri, Kentucky, and Texas. Authorities might be multiplied to sustain the principle herein announced, but we deem it entirely unnecessary.

3. It is contended, however, that one of these defendants in error, to wit, the Atlanta Rapid Transit Company, has in its charter authority to use steam as a propelling power for its cars, and that the weight of authority is that steam-railways constitute a burden and servitude upon a public street. A complete answer to this is, that, by the license or franchise granted by the City of Atlanta to this company, it is authorized only to use electric power, and there is nothing in the record to indicate that it ever intends to use anything else. We do not mean to say that its use of steam instead of electricity as a propelling power would necessarily deprive it of the right to cross this track at the point in question without being liable in damages to the plaintiff railroad company. Whether or not a street or suburban railway constitutes a burden upon streets or highways in a city or country does not depend so much upon the motive powers used in propelling the cars as it does upon the character and nature of business it transacts. For instance, what is known as a commercial railway, which carries not only passengers, but quantities of freight, from one portion of the State to the other, and even from one State to another, in traversing public highways of the country or streets of a city, would necessarily constitute a greater burden and servitude upon such highways or streets than an ordinary car of a street or suburban railway, whether propelled by steam, cable, electricity, or otherwise, which has for its purpose simply the transportation of passengers from one point to the other on the streets of a city, or to adjacent places in the contiguous country. A marked difference between the two systems is that the former often carries long trains of passenger and freight cars over its line, and is not intended at all for the accommodation of the public desiring to go from one portion of the city

to the other, while the latter ordinarily uses one car, and facilitates the transportation of passengers desiring only to go short distances between different points in the city. Hence it is that the decision of this court in *Georgia Midland R. R. Co.* v. *Columbus Southern Ry. Co.*, 89 *Ga.* 205, and which was relied on by counsel for plaintiff in error, has no application whatever to the facts in the present case. It was there decided in the headnote: "Without first making compensation for the damages which will result therefrom, one railway company can not lay and use its track across the track of another railway company located in a public street of a city." It will be seen from the facts in that case that it was a contest between two commercial railway companies, and the city of Columbus constituted a terminus of each of these lines of railway. It was complained in the case that the petitioner constructed its depot, round-houses, etc., on the depot grounds. The lands for terminals of defendant, with its depot-site, side-tracks, etc., lay east of petitioner's property, and it was entirely unnecessary for it, in order to make its proper connections, to construct a side-track just north of petitioner's depot grounds at a point where was located the travel and entrance to petitioner's grounds, thus unnecessarily increasing damage, delay, hindrance, inconvenience, and risk of accidents to the plaintiff at a point where its traffic of every sort passed. It will thus be seen that there is no analogy whatever between that case and the present one, where the defendants' roads, under grant of authority from proper sources, are running their lines along the streets and public highways for the benefit of the public itself. Neither has the case of *Campbell* v. *Metropolitan St. R. Co.*, 82 *Ga.* 320, any application whatever to the case we are now considering. It was there decided: "The construction and operation of a horse railway in the public streets of a city, by authority of the legislature and the consent of the city government, whether it be a new burden upon the streets or not, does not entitle a private individual to compensation therefor, unless the construction or operation of such railway works special damage to his property. . . If noise, smoke, dust, cinders, or things of that sort be shown to have damaged the property, they should be considered in arriving at the amount of the recovery; but

if they amount merely to inconvenience or discomfort to its occupants, they are not an element of damages, and should not be so considered." It appears in that case that the railroad company had permission from the legislature and the city council to lay its track in the streets where it pleased. In this paricular place it elected to lay its track near the sidewalk of plaintiff's residence; and it was contended that the unceasing passage of cars near the entire front of petitioner's property would effectually cut off all safe entrance to or exit from the front of said property to any kind of vehicle. The marked difference between that case and the present one is that the plaintiff there owned the absolute title to the abutting lot. We think the principle therein decided was correct. Under the provision of the constitution which requires compensation to be paid, not only for property taken in the exercise of eminent domain, but also for property damaged thereby, this necessarily implies that for a direct invasion of any legal right of property pertaining to its ownership and enjoyment which results in material damage to the property, the owner must first be compensated, whether it has been seized or not. One of the rights pertaining to the ownership of a home, for instance, is free and comfortable ingress and egress thereto, and this right can not be interfered with, even for the public good, to the extent of causing material damage to the market value of the property itself without compensation being paid in advance to the owner.

4, 5. But in the present case we fail to see that the defendants have invaded or were seeking to invade any legal right of plaintiff. As above indicated, when the plaintiff was permitted to construct its track across an existing city street or public road, it did so subject to the condition that it must submit to the increased inconvenience to it which might result from the growth and development of the city or country, and the consequent increase of travel in the usual methods along such street or road. It acquired only an easement; that is, a privilege of crossing this street and road in the transportation of its freight and passengers. It may be that the crossing of defendants' tracks over this street and highway will cause inconvenience to the plaintiff, but, as we have above demonstrated, this use thereof by the defendants, instead of constituting any bur-

den or servitude upon them, is intended for the convenience and benefit of the traveling public on these streets. The question as to whether or not their construction was necessary and important, in order to accomplish such a purpose, has been passed upon by tribunals constituted by law to decide such issues. There is nothing in the record to show any abuse whatever of the exercise of that power. When plaintiff, therefore, obtained its license to cross these highways, it necessarily took the same subject to any increased inconvenience which might arise by reason of the demands or wants of the public for greater facilities for traveling. *Cleveland* v. *Augusta*, 102 *Ga.* 233. We are at a loss, therefore, to see how any legal right of property of the plaintiff will be invaded, or in any wise affected, by the exercise of the rights and franchises which the street-railway companies are attempting to use in the present instance. It follows from the above that no legal right of plaintiff has been encroached upon, and none of its property has either been taken or threatened to be taken or damaged in contemplation of law. The companies, therefore, owning and operating street-railways of the character above indicated may, under the permission of proper municipal or county authorities, construct their lines across the tracks of the plaintiff, and use the same, without instituting condemnation proceedings, or being required to pay damages. The court did not err in denying the injunctions prayed for, or in dissolving the restraining orders which had previously been granted.

       *Judgments affirmed. All the Justices concurring.*