38571. GORDON COUNTY v. COCHRAN.

DECIDED MARCH 10, 1961—REHEARING DENIED MARCH 30, 1961.

*Eugene Cook, Attorney-General, Carter Goode, E. J. Summerour, Assistant Attorneys-General, Harry Lawrence,* for plaintiff in error.

*Mitchell & Mitchell, D. W. Mitchell, Jr.,* contra.

NICHOLS, Judge. ■ The allegations of the petition as to how the plaintiff's injuries were caused are not set forth in detail inasmuch as the sole contention of the defendant, as to why its general demurrers should have been sustained, is limited to a consideration of the statutes dealing with the upkeep, and liability for lack of upkeep, of bridges over railroad tracks as related to the particular bridge in question. The petition as finally amended was in two counts, count 1 alleging that the bridge was built by a contractor for the county in 1928, and count 2 alleging that it was built by the State Highway Department (either with State employees or by a contractor) in 1928, and both counts alleged that the bridge was a part of U. S. Highway 41 and Georgia Highway 3.

In 1838 the General Assembly enacted a statute which required that: "All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." *Code* § 94-503. In 1888 the General Assembly enacted a statute which read in part as follows: "When the contract for a public bridge . . . is let, the contractor's bond shall be conditioned also to keep it in good repair for at least seven years, and as many more years as may be covered by the contract: Provided, that such contract may be let under existing laws without requiring the aforesaid condition in the contractors' bonds, if in the opinion of the commissioners of roads and revenues, or of the ordinary in counties where there are no such commissioners, it would be to the public interest to dispense with said condition in said bond: Provided, however, that in every case the county shall be pri-

marily liable for all injuries caused by reason of any defective bridges, whether erected by contractors or county authorities." *Code* of 1933, § 95-1001. In 1927 the General Assembly enacted a statute, dealing with the elimination of railroad grade crossings, which read in part as follows: "After the construction of an overpass or underpass, it shall be the duty of the Department [State Highway Department] in the case of State roads, and of the county board in the case of county public roads, to maintain at its or their own expense the drainage, surface and pavement of the highway and bridge, as well as the approaches and guardrails, if any, except that when an overpass is constructed with a floor of wood, then the railroad or railroads shall maintain such floor. It shall be the duty of the railroad or railroads to maintain at its or their expense the foundations, piers, abutments, and super-structures of all underpasses and overpasses located within the limits of its right of way." *Code* of 1933, § 95-1909. This act further provided for the construction of such underpasses and overpasses jointly by the railroad or railroads involved and the department or county. In 1950 this section of the 1927 act was amended to read: "Maintenance of overpass or underpass.—(a) It shall be the duty of the Department in the case of State roads, to maintain all overpasses as defined by section 95-1901, hereafter constructed or which have been constructed or substantially reconstructed since August 23, 1927, even though such overpasses may have been constructed or reconstructed wholly or in part with Federal funds. (b) It shall be the duty of the railroad company or companies to maintain underpasses, as defined by section 95-1901, hereafter constructed or which have been constructed or substantially reconstructed since August 23, 1927, except the lighting, drainage, and pavement of the roadway thereunder which forms a part of the highway or public road. (c) All maintenance herein required by the Department shall be at the expense of the Department, and all maintenance herein required by the railroad or railroads shall be at the expense of such railroads: Provided, however, the duty of maintenance imposed upon the Department by this section shall not operate to subject the Department to liability on account of damages

resulting from any failure of such maintenenace. (d) Notwithstanding the foregoing, the duty and obligation of maintaining overpasses on county public roads shall remain and continue as provided by the original section 85-1909 of the Code of 1933, but the burden of maintenance of underpasses on such county roads shall be as provided by this section; and where an overpass on any county road is constructed with a floor of wood, it shall be the duty of the railroad or railroads to maintain such floor at its or their own expense." (Ga. L. 1950, pp. 419, 420; *Code Ann.* § 95-1909). Thereafter, in 1953, the General Assembly amended *Code* § 95-1001, supra, by adding at the end thereof the following: "The term 'bridges' in this section shall be defined as a structure erected to afford unrestricted vehicular traffic over an obstruction in the public highways of the State, including rivers, streams, ponds, lakes, bays, ravines, gullies, railroads, public highways and canals; the term bridge as defined in this section shall include the approaches to the structure previously defined within 50 feet of either end of said structure except where the bridge itself measures 100 feet or more and in said event within 100 feet of either end of said structure." (Ga. L. 1953, Jan.-Feb. Sess., p. 120; *Code Ann.* § 95-1001).

The contention of the defendant is that the act of 1838 (*Code* § 94-503), supra, and the act of 1950 (*Code Ann.* § 95-1909), supra, are controlling and require a reversal in the present case, while the plaintiff contends that the acts of 1888, as amended by the act of 1953 (*Code Ann.* § 95-1001), supra, when properly considered together with the act of 1927 (*Code* § 95-1909), as amended, supra, require an affirmance of the judgment of the trial court.

In the case of *Floyd County v. Stewart,* 97 Ga. App. 67 (101 S. E. 2d 879), it was held that, where a culvert had been removed, and the bridge that was to replace it had not been installed, there was no liability by the county for the plaintiff's injuries. In *Jackson v. Meriwether County,* 54 Ga. App. 491 (188 S. E. 280), it was held that, where a traveler was injured in 1926 while crossing a defective bridge over a railroad track, which bridge was built under the provisions of the Act of 1838 (*Code* § 94-503), supra, the county was not liable under the

act of 1888 (*Code* § 95-1001), supra, which act did not include bridges over railroad tracks. In *Central of Ga. Ry. Co. v. Keating,* 177 Ga. 345 (170 S. E. 493), the Supreme Court affirmed the decision of this court with reference to whether the act of 1927 (*Code Ch.* 95-19), was applicable to a bridge constructed over a railroad track before the enactment of such act and which had not been improved since the enactment of such act. This court had held that the act of 1927, supra, did not apply to bridges over railroad tracks except in cases where the bridge had been constructed after its passage. *Central of Ga. Ry. Co. v. Keating,* 45 Ga. App. 811 (165 S. E. 873). In *Lumley v. Pollard,* 61 Ga. App. 681, 691 (7 S. E. 2d 308), Judge Sutton, speaking for the court, held in accordance with the Supreme Court decisions that, where a bridge was constructed by a railroad prior to the enactment of the act of 1927, supra, (and no steps had been taken by the Highway Department or county to bring about its improvement or betterment), the act of 1927 placing the duty upon the State or county to maintain the drainage, surface and pavement of the bridge, etc., was not applicable and the duty was still upon the railroad under the provisions of the act of 1838, supra. Applying the above law to the facts in the case sub judice the duty of maintaining the pavement on the bridge in question was not upon the railroad but was upon the public authority that constructed such bridge in 1928 after the enactment by the General Assembly of the act now codified as *Code Ch.* 95-19, supra. With this question decided, the next question presented is whether the 1950 amendment to *Code* § 95-1909, supra, exempting the Highway Department from liability for the negligent maintenance of such bridges is applicable, since the amendment to *Code* § 95-1001, supra, in 1953, which amendment specifically included in the definition of bridges "overpasses" over railroads. The 1950 act expressly exempted the Highway Department from liability in such cases, while the 1953 act expressly included bridges over railroads in the category of those for which suit could be brought against counties for injuries caused by improper maintenance, and clearly the purpose of the 1953 act was to define the "bridges and approaches" for which an action could be brought where injuries were so

caused. After these two amendments to the general law on this subject the General Assembly amended *Code* § 95-1710 (Ga. L. 1957, p. 592), which Code section deals with the ultimate liability of the Highway Department for injuries occurring on State-aid roads, the method used to bring the Department into court, etc., by providing that in all cases the State Highway Department must be served by second original before service upon the county would be perfected. This amendment removed the permissive "vouching in" of the State and made it mandatory that the State defend such action, and also made it mandatory that the State be responsible for any damages awarded in any court of this State for injuries sustained whenever the cause of action originates on bridges or highways, jurisdiction over which shall have been assumed by the Highway Department.

A consideration of all the above acts, all dealing with the same subject matter, leaves no doubt but that the intent of the General Assembly was to place the ultimate liability for injuries sustained on bridges maintained by the Highway Department upon the State, although the action must be brought against the county wherein the cause of action arose. Accordingly, the petition was not subject to general demurrer for the reasons urged, and the trial court did not err in overruling such general demurrers.

■ The defendants filed a plea in bar in the present case which was based upon an instrument executed by the plaintiff to the Southern Railway Co. It was alleged in the "Plea in Bar" that the plaintiff had entered suit in the Circuit Court of Hamilton County, Tennessee, to recover for injuries sustained in the same incident for which the present action was brought. The petition in that case, a copy of which was attached to the plea in the present case, showed that the plaintiff was claiming injuries because of a defective spring on the truck he was driving (which truck was furnished him by his employer, Southern Railway Co.), *and* because of the defect in the pavement on the bridge. The agreement on which the plea in bar was based read as follows: "Covenant not to sue. For and in consideration of the sum of five thousand ($5,000) dollars cash in hand paid, at and before the delivery of these presents, the receipt of which

is hereby acknowledged, J. L. Cochran, does hereby agree and covenant that he will dismiss the suit styled, J. L. Cochran vs. Southern Railway Company, No. 114420, pending in the ·Circuit Court of Hamilton County, Tennessee, and he does hereby agree and covenant not to institute any other suit or action at law or in equity against Southern Railway Company by reason of any claim which he now has or which he may have had or which he may hereafter have against said Southern Railway Company by reason of a personal injury received on or about February 28, 1957, while passing over a bridge between Howardsville, Tennessee, and Rome, Georgia, driving a 2-ton Chevrolet truck owned by Southern Railway Company. This is intended to be a covenant not to sue and shall not affect the rights of J. L. Cochran against Gordon County, Georgia, or against any other person other than Southern Railway Company, and he agrees to indemnify and hold harmless said Southern Railway Company from any and all claims for contribution or indemnification by the said Gordon County on account of any damages which he may recover against Gordon County, Georgia or other person, arising out of said collision."

In a very thorough discussion of the same questions presented by the plea in bar in the present case Judge Gardner in *Atlantic Coast Line R. Co. v. Ouzts*, 82 Ga. App. 36 (2) (60 S. E. 2d 770), held that a covenant not to sue, similar to the one in the case sub judice, did not prohibit the plaintiff from proceeding against the joint tortfeasor. What was said in that case is controlling in the present case, and the judgment of the trial court dismissing the plea in bar must be affirmed. See also *Moore v. Smith*, 78 Ga. App. 49 (50 S. E. 2d 219); and *Register v. Andris*, 83 Ga. App. 632 (64 S. E. 2d 196), and cases cited.

*Judgment affirmed. Townsend, P. J., Carlisle, and Frankum, JJ., concur. Bell, J., concurs as to count 1 and dissents as to count 2. Felton, C. J., and Jordan, J., dissent.*

FELTON, Chief Judge, dissenting as to counts 1 and 2.

■ The first count of the petition is based on the theory that the county erected the bridge in 1928, and was originally under the duty to repair it, and that the county was liable for damages resulting from the failure to repair, and that since the

Highway Department had taken over the bridge and its repair, the Highway Department was liable for damages for failure to repair. This theory is not correct in this case for the reason that the bridge was alleged in count 1 to have been built by the county in 1928. At that time a structure over a railroad was held not to be a bridge, so the county would not have been liable for damages for failure to repair it; consequently, the State Highway Department would not be liable for such damages under the existing laws. Ga. L. 1953, p. 120, amending the definition of the term "bridge" included a structure over a railroad, but this court in *Joyce v. Whitfield County*, 28 Ga. App. 797 (113 S. E. 52), held that *Code* § 95-1001 did not apply to a bridge constructed prior to the date of the enactment of that law, 1888, unless the same had been substantially rebuilt. It follows that the amendment to *Code* § 95-1001, passed in 1953, changing the definition of a bridge to include a structure over a railroad, could have no application to a bridge built in 1928. Since the county would not have been liable for the damages sued for in the first count, the State Highway Department is not liable therefor. If liability is claimed against the State Highway Department in the first count under *Code* § 95-1909, the claim is not well founded for the reason that said section provides immunity to the Department from the damages sued for.

■ Count 2 sets forth no cause of action for the reason that this count alleges that the State Highway Department constructed the bridge in 1928 and that the Department was under the duty to keep it in repair. The 1950 amendment of *Code* § 95-1909 (Ga. L. 1950, p. 420 (1,c)) provides in part: ". . . provided, however, the duty of maintenance imposed upon the department by this section shall not operate to subject the department to liability on account of damages resulting from any failure of such maintenance." It will be observed that a similar immunity was not provided for counties as to their duty of maintenance of county bridges. The reason for the distinction is not clear, but it exists, nonetheless. Unless the above immunity has been repealed the second count sets forth no cause of action. Ga. L. 1953, Jan-Feb. Sess., p. 120, amending *Code* § 95-1001 did not repeal the above immunity provision as to

the Department. *Code* § 95-1001 originally provided solely for the liability of counties and the caption of the act of 1953 makes no reference to the department's liability. No repeal by implication was effected because the subject matter of the Department's liability was not mentioned. The two liabilities are entirely separate, and a repeal by implication of the immunity provision of the amendment of 1950 could not be said to have occurred under any known rule as to repeals by implication. Ga. L. 1957, p. 592 did not change or modify the immunity provision above referred to. A reading of the caption and amendment will show that as amended the words "existing laws" were retained in the law. The other amendment simply provided for a different kind of service upon and notice to the Department. Our province is to declare the law as it exists, not to try to explain or justify it. The General Assembly has clearly exempted the Department from liability for such injuries as are sued for in the second count, and it is not within the province of this court to remove the exemption from the clear provision of the law.

Bell, J., concurs in the dissent as to count 2. Jordan, J., concurs in the dissent as to counts 1 and 2.